IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 16, 2018

**RICHARD KELLEY v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County**
**No. 41201018          Jill Bartee Ayers, Judge**

_____

**No. M2017-01157-CCA-R3-PC**

_____

The Petitioner, Richard Kelley, appeals the Montgomery County Circuit Court's denial of his petition for post-conviction relief from his convictions of four counts of rape of a child, three counts of aggravated sexual battery, and one count of misdemeanor assault and resulting effective sentence of thirty years to be served at 100%. On appeal, the Petitioner contends that he received the ineffective assistance of counsel at trial. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

R. Allan Thompson, Clarksville, Tennessee, for the appellant, Richard Kelley.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Arthur F. Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The State initially charged the Petitioner with eight counts of rape of a child and five counts of aggravated sexual battery for acts committed against his granddaughter, who was twelve years old at the time of the crimes. State v. Richard Thomas Kelley, No. M2014-00740-CCA-R3-CD, 2015 WL 1777547, at *1 (Tenn. Crim. App. at Nashville, Apr. 16, 2015), perm. app. denied, (Tenn. June 11, 2015). Before trial, the State dismissed one count of aggravated sexual battery. Id.

At trial, the victim's mother testified that in 2009, she and her family, including the victim, moved into her parents' home so that she could help her father, the Petitioner, care for her mother, who had cancer. Id. In 2012, the Petitioner owned a tire shop, and the victim occasionally went to the shop with her grandmother. Id. at *2. The victim also went on "'road calls'" with the Petitioner. Id. In May or June 2012, the victim's mother noticed that the victim was spending more time with the Petitioner. Id. During a camping trip in June 2012, the victim's mother noticed that the Petitioner put his arm around the victim's shoulder and rubbed his arm up and down the victim's leg. Id. The victim's mother talked with the victim about what she had observed and, based on their conversation, contacted the police. Id.

The victim, who was fourteen years old at the time of trial, testified that before school let out for the summer in 2012, she and the Petitioner were cleaning the pool. Id. The Petitioner stared at her breasts and told her that boys would want to touch her. Id. The victim then testified about several incidents of abuse that occurred at the Petitioner's tire shop. Id. at *2, 3. Specifically, she stated that the Petitioner forced her to perform fellatio behind a van, touched her breasts under her shirt but over her bra and kissed her while they were sitting on a couch, put his finger "inside her 'part'" in a storage area, and rubbed her groin over her clothes while she was sitting on a bench outside the shop. Id. at *3. The State had the victim draw a diagram of the tire shop while she was on the witness stand. Id. at *2. The victim said that she went on two "road calls" with the Petitioner and that on one of the calls, he touched her breasts and forced her to fellate him. Id. at *3. She said he also forced her to fellate him one time in the garage of their home. Id. The victim testified about incidents of abuse that occurred inside the home. Id. She said that the Petitioner kissed her on the couch, touched her breast over her bra in the kitchen, and rubbed her leg and "'private area'" while they were watching television in his bedroom. Id.

On cross-examination, the victim testified about an incident at daycare in which she and a little boy put their hands down each other's pants and an incident in which her father showed her pornography. Id. She acknowledged receiving disciplinary action at school for hitting a student and making an obscene gesture on the bus in 2010 and receiving disciplinary actions after the Petitioner began abusing her. Id. The defense tried to impeach the victim with her testimony from the Petitioner's July 2012 preliminary hearing. Id. During the hearing, the victim testified that the pool incident occurred after school let out for the summer, not before, and that the incident of digital penetration occurred in a "'hallway'" of the tire shop. Id. Moreover, at the hearing, the victim did not identify any other places in the shop where abuse occurred. Id.

At the close of the State's case-in-chief, the trial court dismissed four counts of rape of a child, and the State elected offenses as to the remaining four counts of rape of a child and four counts of aggravated sexual battery. Id. at *4. The Petitioner presented the testimony of several character witnesses and his brother, who testified that he did not see the Petitioner and the victim together often and that the victim's sister was usually with them. Id. The Petitioner testified in his own behalf, denying the victim's allegations. Id. On cross-examination, the Petitioner acknowledged that the victim visited his tire shop but denied that he was alone with her or took her on a road call with him. Id. On rebuttal, an employee of the tire shop testified that the victim was at the shop a couple of times per week but that she was always with an adult. Id. The employee also stated that he saw the victim and the Petitioner together at the shop and that he saw them leave together for a road call. Id.

The jury convicted the Petitioner as follows:

> The defendant was convicted in Count 1 of rape of a child based on the testimony of fellatio by the van; the defendant was convicted in Count 2 of aggravated sexual battery based on the testimony that he touched the victim's breasts on the couch at the shop; the defendant was convicted in Count 3 of rape of a child based on the testimony of digital penetration in the storeroom; the defendant was convicted in Count 4 of aggravated sexual battery based on the testimony that he touched the victim's groin on the bench outside the shop; the defendant was convicted in Count 5 of rape of a child based on the testimony of fellatio by the tractor during the "road call"; the defendant was convicted in Count 6 of aggravated sexual battery based on the testimony that he touched the victim's groin in his bedroom while watching TV; the defendant was convicted in Count 8 of assault based on the testimony that he touched the victim's breasts and kissed her in the kitchen; the defendant was convicted in Count 10 of rape of a child based on the testimony of fellatio in the home garage.

Id. at *5. After a sentencing hearing, the trial court sentenced the Petitioner to concurrent sentences of thirty years for each conviction of rape of a child, a Class A felony; ten years for each conviction of aggravated sexual battery, a Class B felony; and six months for the conviction of assault, a Class B misdemeanor, for a total effective sentence of thirty years to be served at 100%. Id. at *1. On appeal, the Petitioner challenged the sufficiency of

the evidence.  Id. at *5.  This court found the evidence sufficient and affirmed the Petitioner's convictions.  Id. at *7.

After our supreme court denied the Petitioner's application for permission to appeal, he filed a timely petition for post-conviction relief, arguing that he received the ineffective assistance of trial counsel.  Relevant to this appeal, the Petitioner alleged that trial counsel was ineffective because counsel failed to interview the Petitioner's wife and mother, who would have testified to his character and that he was never alone with children, and because trial counsel failed to ensure that a fair and impartial jury heard his case.  The post-conviction court appointed counsel to represent the Petitioner.  Subsequently, the Petitioner filed a pro se motion for new post-conviction counsel and a pro se amended petition for post-conviction relief.  In the amended petition, the Petitioner alleged that he also received the ineffective assistance of counsel because trial counsel allowed the State to lead its witnesses during direct examination.  The post-conviction court appointed new post-conviction counsel, and new counsel did not file an amended petition.

At the evidentiary hearing, the Petitioner testified that the first time trial counsel met with him in jail, trial counsel appeared "quite angry" and told him that counsel was only going to have one witness from the Petitioner's immediate family testify at trial.  The Petitioner told trial counsel that he wanted counsel to talk with the Petitioner's wife, but counsel never did so.  Instead, trial counsel talked with the Petitioner's brother and a cousin.  Trial counsel told the Petitioner that according to the Petitioner's daughter, the Petitioner's wife was mentally ill.  The Petitioner and his wife were married thirty-seven years but were divorced at the time of the post-conviction evidentiary hearing.  The Petitioner said that his ex-wife was "just manic depressive," that her condition was "controlled with medications," and that she did not have a mental illness that would have prevented her from coming to court.  He said she would have testified at trial that he "was never alone with children anytime."  The Petitioner said trial counsel also should have talked with the Petitioner's mother.

The Petitioner testified that trial counsel never gave him discovery materials.  The Petitioner received his daughter's Department of Children's Services (DCS) file from trial counsel, but the file did not contain anything related to the Petitioner.  The Petitioner was present for jury selection but "didn't get to approve or disapprove of the jury that was picked."  During jury selection, the Petitioner learned that "the chairperson" of the jury was a court clerk.  The Petitioner said that he did not protest about her being on the jury to trial counsel because he was "hard of hearing" and was not wearing headphones during jury selection.  The Petitioner said he was prejudiced by the court clerk's being on the jury because he thought she "swayed" the rest of the jurors.

- 4 -

The Petitioner testified that the State's case was "my granddaughter's word against mine" and that trial counsel allowed the prosecutor to lead the victim during her testimony. Trial counsel also allowed the prosecutor to lead the Petitioner's former employee. Although the employee testified that it would have been "very unlikely" for him to have seen the Petitioner and the victim leave together for a road call, the prosecutor "basically . . . coerced" the employee into saying that it was possible he saw the Petitioner and the victim leave the shop together. Before trial, trial counsel had the Petitioner "draw up a completed detailed illustration of [the] shop interior." The Petitioner brought the drawing to trial counsel on the morning of trial. During the victim's testimony, the State gave her a piece of paper and allegedly had her draw a diagram of the Petitioner's shop on the paper. The State then presented the drawing as evidence and "put it on the wall." The Petitioner said that the victim's drawing "was [his] drawing" and that he thought trial counsel gave his drawing to the prosecutor, who then gave it to the victim. He acknowledged that the victim's memory "wasn't good enough to have made that map."

On cross-examination, the Petitioner acknowledged that trial counsel was able to prevent the jury from hearing that the Petitioner was convicted of sexually abusing the victim's mother. He also acknowledged that trial counsel presented plea offers to him but that he turned them down. Trial counsel called witnesses to testify on the Petitioner's behalf. The Petitioner asked that trial counsel also call his shop employee to testify, but trial counsel said the employee did not want to get involved in the trial. The employee ended up testifying for the State, and some of his testimony "hurt" the Petitioner's defense.

Trial counsel testified that he had been licensed to practice law since 1988 and was appointed to represent the Petitioner. The State gave discovery materials to trial counsel and allowed him to view a recording of the victim's forensic interview. The State would not give a copy of the recording to trial counsel, so he was unable to show the interview to the Petitioner. However, trial counsel told the Petitioner what the victim said in the interview. He also provided discovery materials to the Petitioner "a couple times" and went over discovery with the Petitioner. The Petitioner wanted to present the victim as "a little wildcat that was always in trouble." Therefore, trial counsel obtained the victim's DCS file. The Petitioner gave trial counsel the names of several witnesses, and counsel called witnesses on the Petitioner's behalf at trial. Trial counsel said that he talked with the Petitioner's wife but that she "made it clear that she was going to punish whoever brought her in [to court]." The Petitioner insisted to trial counsel that his wife would come to the trial on her own, but she never did, which was "extremely telling" to trial counsel. Trial counsel also spoke with the Petitioner's mother, but she "didn't appear to have any information" to help the Petitioner. The Petitioner wanted trial counsel to call the Petitioner's shop employee as a witness. However, trial counsel did not want the

employee to testify because the employee "had some stuff that was not going to help" and "appeared to be more on the State's side than [the Petitioner's] side."

Trial counsel testified that he prepared a large map of the Petitioner's tire shop for trial. The victim also drew a map of the shop during her direct testimony. Trial counsel said that he did not give the map drawn by the Petitioner to the victim and that he did not remember giving the Petitioner's map to the State. Trial counsel saw the State hand the victim a blank piece of paper while she was on the witness stand. When the victim gave the paper back to the State, the drawing was on it. Trial counsel acknowledged that he objected to the State's leading the victim one time but said that he did not remember making any other objections to leading. He said, though, that if the State had been "out of line," he would have made more objections.

Trial counsel testified that the prosecutor said she would consider a settlement offer of "25-years day for day" as a Range I offender. Trial counsel presented the offer to the Petitioner, but the Petitioner was not interested. At the close of the State's case-in-chief, trial counsel was able to get the trial court to dismiss four counts of rape of a child. Moreover, the jury found the Petitioner guilty of simple assault as a lesser-included offense of one count of aggravated sexual battery. Although trial counsel was able to keep the jury from hearing about the Petitioner's criminal history, the Petitioner's criminal history was presented at sentencing and resulted in his being classified as a Range II offender. The Petitioner claimed that he had received a governor's pardon for his sexual conviction involving the victim's mother. Trial counsel said that he spent forty to fifty hours looking for the pardon and that he even contacted the "attorney chief of staff for the governor" but that no pardon was ever found. When trial counsel was appointed to represent the Petitioner, the Petitioner had been facing a possible effective sentence of 260 years. The Petitioner ended up receiving an effective sentence of thirty years, so trial counsel was "fairly pleased" with the outcome of the case. Trial counsel said that, including the amount of time he spent looking for the Petitioner's pardon, he spent a total of 110 hours on the Petitioner's trial and twenty-five hours on the Petitioner's direct appeal of his convictions.

On cross-examination, trial counsel testified that he talked with the Petitioner about everyone on the jury and that "the clerk that was on there was a long time clerk from the juvenile court." Trial counsel said that he had a good relationship with the clerk and that he was "impressed" by her because "she didn't decide somebody was guilty simply because something came through juvenile court." He then explained, "And, frankly, with this sort of case, I thought, and still think, our best shot was to have somebody that could step past the Scarlet letter of child sex abuse." He thought the State made a mistake by leaving the clerk on the jury.

Trial counsel testified that the prosecutor in this case "fairly early on, took a fairly distinct dislike to [the Petitioner], and it only got worse as time went on." The victim was a very good witness a trial. Trial counsel said that she was articulate and looked at the jury and that defense attorneys had to treat child victims with "kid gloves." The Petitioner also testified at trial, but the victim "made a better presentation on the witness stand." Trial counsel objected one time to the prosecutor's asking the victim leading questions. He said he did not object more because jurors "start getting aggravated if the attorney is sitting over there being a little Jack-in-the box." He stated that in any event, "there was nothing devastating that I remember [the prosecutor] leading on." The map the victim drew at trial "pretty much looked about like" the map trial counsel prepared for trial. The victim did not see trial counsel's map before she testified, and trial counsel did not know if she saw anyone else's map.

In a written order, the post-conviction court denied the petition for post-conviction relief. First, the court found the Petitioner's claim that trial counsel failed to interview witnesses to be "without merit." The court stated that trial counsel interviewed all the witnesses the Petitioner requested, that trial counsel called several witnesses at trial, and that trial counsel elected not to have the Petitioner's wife and former shop employee testify because they would not have been favorable to the defense. As to the Petitioner's claim that trial counsel failed to ensure that his trial was heard by a fair and impartial jury, the post-conviction court stated that although the Petitioner contended the juvenile court clerk should not have been on the jury, the Petitioner participated in voir dire, never told trial counsel that he had hearing problems, and never requested a headset to assist with his hearing. Thus, the court found that the Petitioner was not entitled to relief. As to the Petitioner's contention that trial counsel was ineffective for failing to object to the State's leading questions, the post-conviction court found that the record showed trial counsel raised at least one objection to the State's leading the victim and that trial counsel was "intentionally cautious" to objecting due to the victim's age. Finally, the court stated that it found nothing in the record to substantiate the Petitioner's claim at the evidentiary hearing that trial counsel gave the Petitioner's map of his shop to the victim. The court stated that the record indicated the prosecutor handed a blank sheet of paper to the victim and that the victim drew the shop "on her own during trial." Accordingly, the court denied the petition for post-conviction relief.

## II. Analysis

On appeal, the Petitioner maintains that he received the ineffective assistance of trial counsel because counsel allowed the prosecutor to lead the State's witnesses, allowed a juvenile court employee to be on the jury, shared a drawing with the State so that the victim "was able to very nearly re-create it" during her testimony, did not subpoena or call his mother as a fact witness at trial, and should have had his wife testify

- 7 -

on his behalf. The State argues that the Petitioner has failed to show that he received the ineffective assistance of counsel. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

- 8 -

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Turning to the Petitioner's claim that trial counsel allowed the State to ask its witnesses leading questions, we have reviewed the trial transcript of the State's direct examination of its only two witness, who were the victim and the victim's mother, and we find nothing improper. Although the State posed some leading questions to the victim, this court has stated that "trial courts have been given broad discretion in permitting leading questions in sexual abuse cases when the witness is a child victim." State v. William Dearry, No. 03C01-9612-CC-00462, 1998 WL 47946, at *11 (Tenn. Crim. App. at Knoxville, Feb. 6, 1998) (citing Swafford v. State, 529 S.W.2d 748, 749 (Tenn. Crim. App. 1975)). Moreover, trial counsel testified that his decision not to raise frequent objections to the State's leading questions was a tactical strategy so as not to anger the jury. On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsel's behavior by "20-20 hindsight." See State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982).

Next, the Petitioner claims that he received the ineffective assistance of counsel because trial counsel allowed a juvenile court employee to be on the jury. The post-conviction court found that the Petitioner was not entitled to relief because he was aware of the court clerk during jury voir dire and did not voice any concerns about her being on the jury to trial counsel. We note that trial counsel testified that he knew the juvenile court clerk to be fair and that he made a strategic decision to keep her on the jury. Id. Regardless, the Petitioner has failed to offer any evidence that he was prejudiced by the juvenile court clerk's serving on the jury. Accordingly, he has failed to show that he received the ineffective assistance of counsel.

As to the Petitioner's claim that he received the ineffective assistance of counsel because trial counsel gave his drawing to the State, trial counsel testified that he did not give the Petitioner's drawing to the State and that the victim appeared to draw her own map of the shop during her testimony. Our review of the trial hearing transcript shows that the prosecutor asked the victim, "Do you think that if I passed you a piece of paper and a pen that you could draw a picture of the shop?" The victim said yes, so the prosecutor handed her paper and a pen. The transcript states that the victim "compli[ed] with the State's request" and that the prosecutor instructed the victim to sign and date the drawing. The victim did as instructed, and the State entered the drawing into evidence as exhibit one. The victim's drawing is in the record before us, but the Petitioner's drawing is not in the record. The post-conviction court accredited trial counsel's testimony that he did not give the Petitioner's drawing to the State. Therefore, the Petitioner again has failed to show that he received the ineffective assistance of counsel.

Finally, the Petitioner contends that he received the ineffective assistance of trial counsel because counsel failed to call his mother and wife to testify at trial. However, trial counsel testified that he did not call the victim's mother to testify because she did not have any information that was helpful to the Petitioner and that he did not call the Petitioner's wife to testify because she "made it clear that she was going to punish whoever brought her in [to court]." The post-conviction court accredited trial counsel's testimony that he did not call the witnesses because they would not have provided information favorable to the defense. We note that the Petitioner's mother passed away sometime after his trial and that the Petitioner did not have his ex-wife testify at the post-conviction evidentiary hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit the witnesses might have offered to the Petitioner's case. Id. Thus, the Petitioner is not entitled to relief on this issue.

## III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE